UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDIGO HATCHER,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF JERSEY CITY POLICE DEPARTMENT, *et al*,<br><br>*Defendants*. | Civil Action No. 15-8303<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment filed by Defendants City of Jersey City ("Jersey City"), the City of Jersey City Police Department ("JCPD") and Officer Eddie Fernandez. D.E. 52. Plaintiff Indigo Hatcher opposes the motion (D.E. 54-57), and Defendants filed a brief in reply (D.E. 62).[1] The Court reviewed all submissions made in support and opposition of the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part**.

---

[1] The brief in support of Defendants' motion for summary judgment (D.E. 52-1) is referred to as "Defs' Br."; Plaintiff's opposition brief (D.E. 56) is referred to as "Plf's Opp."; and Defendants' reply brief (D.E. 62) is referred to as "Defs' Reply".

I.   **FACTS AND PROCEDURAL HISTORY**

A. **Factual Background**[2]

From approximately 3:30 p.m. to 6:00 p.m. on December 21, 2014, Defendant Eddie Fernandez, a patrol officer with the JCPD, performed plain clothes surveillance at Fulton Avenue in Jersey City. DSOMF ¶¶ 1, 4, 15, 30. Fernandez and other JCPD officers were conducting surveillance because of complaints that drugs were being sold in the area. *Id.* ¶¶ 17-19. When a JCPD officer performs surveillance, he "surveys the relevant area to see what is going on in the immediate area . . . look[ing] for illegal activity." *Id.* ¶ 21. If the officer observes unlawful conduct, he informs the "perimeter unit." *Id.* The perimeter unit, which also consists of JCPD officers, is located within two to three blocks from the surveillance area, and is directed to arrest actors that the surveillance unit observes performing illegal activity. *Id.* ¶¶ 23-24.

On December 21, 2014, Officer Fernandez performed surveillance from the backseat of an unmarked car with tinted windows. *Id.* ¶ 29. The car was parked across from an empty lot on Fulton Avenue where Fernandez had concluded that, "[b]ased on past experience and recent complaints," people hid drugs. *Id.* ¶ 27. While performing surveillance, Officer Fernandez observed a female walking back and forth in front of the lot, which Officer Fernandez deemed "suspicious." *Id.* ¶ 33. Shortly after seeing the female, a van pulled up and the female approached the vehicle. Officer Fernandez then watched the driver exit the van and give the female a black bag in exchange for cash. *Id.* ¶ 34. The female took possession of the bag, ran into the empty lot,

---

[2] The factual background is taken from Defendants' Statement of Undisputed Material Facts ("DSOMF") (D.E. 52-2); Plaintiff's Statement of Material Facts ("PSOMF") (D.E. 57-1); the Certification of Philip S. Adelman and supporting exhibits ("Adelman Cert.") (D.E. 52-4); and the Certification of Aymen A. Aboushi and supporting exhibits ("Aboushi Cert.") (D.E. 55).

2

and placed the bag on the ground next to "a big box truck" parked in the lot. *Id.* ¶ 36. Officer Fernandez then saw the female leave the empty lot and speak with the van driver. *Id.* ¶ 37.

After observing these events, Officer Fernandez instructed the perimeter unit to stop the van for further investigation. The perimeter unit eventually pulled the van over and arrested the driver. *Id.* ¶¶ 37-38. Presumably after the van left, Officer Fernandez watched the female "go to the black bag in the empty lot, take out a bag from inside the black bag and give it to another unknown male." *Id.* ¶ 39. While this was occurring, Officer Fernandez saw another female standing in the middle of Fulton Avenue "looking back and forth." *Id.* ¶ 40. "Based on Officer Fernandez's experience and training, he concluded that [the first female] had just sold a drug to the unknown male while [the second female] was looking out for police." *Id.* Officer Fernandez observed the first female allegedly sell drugs to a second unidentified man in the same manner. He then described the second male to the perimeter unit, who stopped the male and recovered drugs on his person. *Id.* ¶ 42. Eventually, the two females went into a house with the address of 45 Fulton Avenue, and Officer Fernandez ended his surveillance because it was getting dark. *Id.* ¶¶ 44, 54. Before leaving the scene, Officer Fernandez directed the perimeter unit to recover the black bag from the empty lot; the bag contained illegal drugs. *Id.* ¶¶ 45-46.

Officer Fernandez then went to the South District Police Precinct and within an hour, requested assistance from non-party Detective Morris[3] in order to identify the two females that he saw during the surveillance. *Id.* ¶¶ 47-48. At the time, Officer Fernandez claims that he did not know the identity of either female. *Id.* ¶¶ 32-33, 47. The first woman was wearing a black knitted

---

[3] Morris was originally named as a defendant in this matter. The claims against him, however, were dismissed pursuant to a voluntary stipulation between the parties. D.E. 51.

hat, black coat, blue jeans and sneakers. The second woman was wearing a heavy, black North Face coat. *Id.* ¶ 58.

As a detective, Morris had access to the computer system used to look up Bureau of Criminal Investigation ("BCI") data. Using the database, detectives can check BCI identification numbers, which are given to individuals who have been arrested. In addition, a detective can enter an address into the BCI database and retrieve photographs and identifying information of persons who were previously arrested at that address. *Id.* ¶¶ 49-52. With Detective Morris's assistance, Officer Fernandez concluded that Plaintiff Indigo Hatcher was the first female who he saw selling drugs, and Plaintiff's sister, Jasmine Hatcher, was the look out. *Id.* ¶ 40. How Officer Fernandez ascertained the identity of the two females that he observed earlier in the day, however, is disputed.

Officer Fernandez testified that he told Morris the address of the house that he saw the women enter, 45 Fulton Avenue, and that Morris entered this address into the BCI database. After Morris entered the address into the database, the names Indigo and Jasmine Hatcher "popped up." Aboushi Cert. Ex. B, Deposition of Eddie Fernandez at T55:7-18 (June 30, 2016) (hereinafter "Fernandez Dep"). Morris pulled up the arrest reports for Indigo and Jasmine, which included photographs of both women. After seeing Indigo's photograph, Officer Fernandez identified her as the first female who was selling drugs, and after seeing Jasmine's photograph, Fernandez identified her as the lookout. *Id.* at T55:18-56:3.

Morris, however, testified that Officer Fernandez "provided [him] with a substantial amount of information in order for [Morris] to figure out who that person [*i.e.* Indigo] was." Aboushi Cert. Ex. C, Deposition of Dejon Morris at T21:16-18 (June 30, 2016) (hereinafter "Morris Dep."). Although Morris did not recall precisely what information Officer Fernandez provided to him, Morris believed that Fernandez provided the address, the name Indigo Hatcher,

and potentially her date of birth. *Id.* at T21:19-22; T23:9-10. Because Fernandez provided Morris with enough identifying information, Morris testified that he did not need to conduct an address search in the BCI database. *Id.* at T24:5-25:4. Morris also testified that Fernandez only provided him with information for one female, and accordingly, he only pulled one photograph from the database for Fernandez to review. Thus, Fernandez only identified one person. *Id.* at T26:12-21. After Morris inputted the information provided by Fernandez into the database, a picture came up. *Id.* at T23:11-19. When the photo appeared on Morris's computer screen, Fernandez said, "That's her." *Id.* at T28:1-7. Once Fernandez saw the photograph associated with Plaintiff's BCI report, "he was 100% sure" that Indigo Hatcher was the first female he saw while conducting surveillance earlier in the afternoon. DSOMF ¶ 56.

At approximately 7:00 p.m. that same evening, Officer Fernandez called Jersey City Municipal Court Judge Rosen and provided Judge Rosen with information regarding his surveillance. Based on this information, Judge Rosen determined that there was probable cause, and signed four complaint-warrants for Plaintiff's arrest. DSOMF ¶¶ 59, 62; Adelman Cert. Ex. B. The complaint-warrants stated, among other things, that Plaintiff possessed illegal drugs with the intent to distribute and that she conspired with Jasmine to commit drug offenses. DSOMF ¶ 61, Adelman Cert. Ex. B. Then, on April 9, 2015, Officer Fernandez testified in front of a grand jury as to the events he saw on December 21, 2014. Because of Officer Fernandez's testimony, which included his determination that Plaintiff was the first female, an indictment was returned against Plaintiff on April 9, 2015. The indictment contained various allegations concerning the possession and distribution of illegal drugs on December 21, 2014. DSOMF ¶¶ 63-64.

Plaintiff indicates that she was not even in Jersey City, much less on Fulton Avenue, when Fernandez was surveilling the area. While Fernandez was conducting surveillance in the afternoon

on December 21, 2014, Plaintiff indicates that she working at a Shop-Rite in Hoboken, New Jersey. Plaintiff's time card from Shop-Rite shows that on December 21, she worked from 1:23 p.m. to 6:36 p.m. PSOMF ¶¶ 6-7. Despite Plaintiff's representation that she was at work when the surveillance occurred, "Fernandez claims that he is 100% sure that Indigo Hatcher was engaged in the narcotics activity he claims to have observed." *Id.* ¶ 26.

In the summer of 2015, Plaintiff received a notice in the mail to appear in court in Jersey City. Plaintiff appeared and was informed by a judge that there were drug charges pending against her and that there was a warrant for her arrest. DSOMF ¶¶ 66-67; PSOMF ¶ 34. Plaintiff was arrested and bail was set at $10,000. PSOMF ¶ 36. Plaintiff was placed in a holding cell but was released the same day when she posted bail. DSOMF ¶¶ 69-71.

On August 10, 2015, the charges against Plaintiff were dismissed because the State determined that Officer Fernandez's identification of Plaintiff was incorrect. *Id.* ¶ 72; PSOMF ¶ 39. In moving to dismiss the Indictment, the Assistant Prosecutor explained that "[a]s it turns out your Honor, the police did not observe Indigo Hatcher making hand[-]to[-]hand transactions, it was another female who entered the home at 45 Fulton Street." PSOMF ¶ 39.

### B. Procedural History

Plaintiff filed the instant Complaint on November 25, 2015, alleging claims for malicious prosecution (Count One), false arrest and unlawful imprisonment (Count Two), and illegal search and seizure (Count Three) pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2. *See* Compl., D.E. 1. The Complaint also asserts a *Monell* claim against the JCPD for its failure to train, supervise, and control its police officers, and a claim for supervisory liability (Count Four). *Id.* On March 23, 2018, the Court entered a voluntary stipulation between the parties that dismissed two defendants; Plaintiff's claim for punitive

damages against Jersey City; and Count Four, Plaintiff's municipal liability claim. D.E. 51. On April 11, 2018, the remaining Defendants filed this motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Plaintiff's claims arise under 42 U.S.C. § 1983 and the NJCRA. Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To prove a Section 1983 claim, a plaintiff must demonstrate that (1) a person deprived her of a right secured by the Constitution or federal law; and (2) the person who deprived her of that right acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J. July 29, 2016). Here, Plaintiff alleges that Defendants violated her Fourth Amendment rights.

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the

> Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez*, 2016 WL 4107689, at *5 (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

### A. Claims Against the JCPD

Defendants argue that summary judgment should be granted as to the JCPD because a municipal police department is not an entity subject to suit, Defs' Br. at 7-8, and that the JCPD cannot be liable under a theory of vicarious liability, *id.* at 6. Plaintiff does not appear to oppose Defendants' arguments regarding the JCPD.

The Court agrees that the JCPD is not a proper party because local police departments are not subject to suit under Section 1983 or the NJCRA. *See Padilla v. Township of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (finding that in "Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity") (internal quotation omitted); *Castoran v. Pollak*, No. 14-2531, 2017 WL 4805202, at *7 (D.N.J. Oct. 25, 2017) (dismissing Section 1983 and NJCRA claims asserted against local police department). Consequently, Defendants' motion for summary judgment is granted and the JCPD is dismissed as a defendant in this matter.

## B. Claims Against Jersey City

Defendants contend that the claims against Jersey City should also be dismissed because a municipality cannot be liable under Section 1983 under a theory of respondeat superior. Defs' Br. at 6. Plaintiff also does not appear to oppose Defendants' arguments with respect to Jersey City.

Again, the Court agrees with Defendants. "A municipality cannot be responsible for damages under section 1983 on a vicarious liability theory, and 'can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (internal citations omitted); *Ingram v. Township of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("[B]ecause respondeat superior liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that respondeat superior liability is not permitted for claims under . . . the NJCRA"). Here, Plaintiff voluntarily dismissed her *Monell* claim.[4] D.E. 51. As a result, her claims against Jersey City appear to be premised solely on a theory of vicarious liability. Because this is not a viable theory of liability as to Jersey City, Defendants' motion for summary judgment is granted on these ground and Jersey City is dismissed as a defendant in this matter.

## C. Claims Against Officer Fernandez

Defendants[5] also maintain that summary judgment should be granted for the claims against Officer Fernandez in his official capacity. Defs' Br. at 24-25. "[C]laims against defendants in

---

[4] A plaintiff seeking to hold a municipality liability under Section 1983 via a *Monell* claim "must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978)).

[5] Because the JCPD and Jersey City are dismissed as defendants, the remainder of this opinion only addresses the claims as to Defendant Fernandez in his personal capacity, the only remaining Defendant in this matter.

their official capacity represent an action against the municipality." *Rodriguez v. City of Camden*, No. 09-1909, 2010 WL 186248, at *6 (D.N.J. Jan. 13, 2010); *see also Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("[A] lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them."). As discussed, municipalities are not liable unless the wrongdoing "was caused by the municipality's policy or custom." *Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 690). Plaintiff explains that the claims asserted against Fernandez in his official capacity involve the use of "his position as [a] JCPD officer to provide specific information that led to the identification and false arrest of Plaintiff." *See* Plf's Br. at 14. Thus, Plaintiff's claims against Fernandez in his official capacity are clearly not based on an alleged violation of a municipal policy. Therefore, Plaintiff's Section 1983 claims against Officer Fernandez in his official capacity cannot proceed. The Court will grant Defendants' motion for summary judgment on these grounds.

Turning to the claims against Officer Fernandez in his personal capacity, Defendants contend that because there was probable cause to indict Plaintiff, her claims for false arrest/unlawful imprisonment, illegal search and seizure, and malicious prosecution fail as a matter of law. Defs' Br. at 8-21. False arrest and false imprisonment are very similar and are often considered together. For a Section 1983 false arrest claim, a plaintiff must establish that (1) there was an arrest; and (2) the arrest was made without probable cause. *See James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)); *see also Nanton v. Mecka*, No. 11-6132, 2013

WL 1844756, at *6 (D.N.J. Apr. 30, 2013) ("The validity of an arrest does not depend on the ultimate finding of guilt or innocence following an arrest."). In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citations omitted); *see also Reedy v. Township of Cranberry*, No. 06-1080, 2007 WL 2318084, at *3 (W.D. Pa. Aug. 9, 2007) ("The basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest."). A claim for illegal search and seizure also "stands or falls based on the existence of probable cause or not." *Crane v. Sussex Cty. Prosecutor's Office*, No. 08-1641, 2009 WL 192567, at *4 (D.N.J. Jan. 27, 2009). Finally, for a Section 1983 malicious prosecution claim, a plaintiff must establish that (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered from a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Thus, Defendants correctly assert that if there was probable cause to indict Plaintiff, Plaintiff's claims fail as a matter of law. *See Herman v. City of Millville*, 66 F. App'x 363, 365 n.3 (3d Cir. 2003) (stating that probable cause is a "complete defense" to plaintiff's false arrest, false imprisonment, and malicious prosecution claims).

Defendants maintain that in light of the grand jury indictment, there was probable cause to prosecute Plaintiff. As a result, Defendants argue that summary judgment must be granted for them. Defs' Br. at 8-11. Plaintiff counters that there is a genuine issue of material fact that precludes summary judgment. Plf's Opp. at 7-9.

"A grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). This prima facie evidence, however, may be rebutted with evidence that the presentment was "procured by fraud, perjury or other corrupt means." *Id.* In fleshing out the parties' arguments, there is a fundamental factual issue that precludes granting summary judgment for Defendants – Plaintiff's whereabouts on December 21, 2014. As noted, Plaintiff indicates that she was working in another town during the time of Fernandez's surveillance in Jersey City. PSOMF ¶¶ 6-7. As a result, if Plaintiff is believed, then she could not have been observed by Fernandez. Yet, Defendants do not concede that Plaintiff was working in Hoboken, such that Fernandez *mistakenly* identified Plaintiff as being the first woman he observed during his surveillance. Although Defendants argue, in passing, that Fernandez may have made a mistake, *see* Defs' Br. at 31, they fail to point to any facts demonstrating that a mistake occurred. Rather, "Fernandez claims that he is 100% sure that Indigo Hatcher was engaged in the narcotics activity he claims to have observed."[6] PSOMF ¶ 26. Thus, if a jury believes Plaintiff, then Fernandez could have not seen Plaintiff commit the drug activity and, as a result, he lacked probable cause seek charges against her. Similarly, Plaintiff's indictment, which was based on Fernandez's grand jury testimony identifying Plaintiff, would have been procured through wrongful means.

---

[6] If a police officer mistakenly arrests the wrong person, the arrest is nevertheless constitutional if there is probable cause to arrest the correct person, and the officer reasonably believes that he arrested the right person. *United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996) (citing *Hill v. California*, 401 U.S. 797, 802 (1971)). Accordingly, had Defendants argued that Fernandez reasonably, but mistakenly, identified Plaintiff as being present in Jersey City, the Court would assess whether Fernandez's mistaken identification was reasonable. However, Defendants have pointed to no evidence that justifies a mistaken identification analysis. To the contrary, Fernandez unequivocally testified that he observed Plaintiff during his surveillance.

There is also a genuine issue of material fact as to how Fernandez procured Plaintiff's identity following his surveillance. Fernandez claims that he merely gave Morris the relevant address, 45 Fulton Avenue, and Morris inputted the information into the BCI Database. As a result of Morris's computer search, according to Fernandez, Morris retrieved photographs of both Plaintiff and her sister, Jasmine Hatcher. Morris recalls the events differently. Morris indicated that Fernandez already had Plaintiff's name when he (Fernandez) approached Morris. Morris also remembers Fernandez only asking about Plaintiff rather than both Plaintiff and Jasmine. Fernandez and Morris's different versions raise related concerns. If Morris is believed, then his testimony completely undercuts Fernandez's claim that he (Fernandez) did not know Plaintiff's identity before approaching Morris. At a minimum, such an inconsistency is relevant to Fernandez's credibility on the central issue in the case – Plaintiff's identity.

Because of these two material factual disputes, Defendants' motion for summary judgment is denied as to the claims asserted against Officer Fernandez.

### D. Qualified Immunity

Qualified immunity can protect a municipal officer from liability in a Section 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in a two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, taken in the light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson*

v. *Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to consider either prong of the two-part analysis first. *Id.* at 236.

"The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). In deciding qualified immunity questions at summary judgment, a court must view the facts in the light most favorable to the plaintiff. *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Thus, summary judgment may be granted to an officer if, when interpreting the facts in the light most favorable to the non-moving party, the court determines that the evidence does not support a violation of a clearly established constitutional right. *Mitchell v. Forsyth*, 472 U.S. 511, 546 (1985) (stating that "when a trial court renders a qualified immunity decision on a summary judgment motion, it must make a legal determination very similar to the legal determination it must make on a summary judgment motion on the merits"); *see also Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Scott*, 550 U.S. at 378.

Defendants only address the first inquiry, that Officer Fernandez did not violate Plaintiff's constitutional rights, arguing Officer Fernandez is entitled to qualified immunity because his method of identifying Plaintiff was reasonable. Defs' Br. at 28-31. Yet, to find that Fernandez acted reasonably in identifying Plaintiff would require the Court to disregard Plaintiff's evidence that she was not even present during the surveillance. It would further require the Court to ignore that Fernandez and Morris present materially different versions as to how Fernandez identified Plaintiff. Again, Defendants have not presented evidence that Fernandez's identification was mistaken but nevertheless constitutionally protected. Because of the parties' diametrically opposed views as to Plaintiff's whereabouts on December 21, 2014 – along with the inconsistent

testimony of Fernandez and Morris viz-a-vis the identification - the Court cannot conclude at this time that Officer Fernandez is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion (D.E. 52) is **GRANTED in part and DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: February 27, 2019

                                                  John Michael Vazquez, U.S.D.J.